Sonya L. Smallets, Esq. (SBN226190)
Aaron P. Minnis, Esq. (SBN202935)
Sean D. McHenry, Esq. (SBN284175)
MINNIS & SMALLETS LLP
369 Pine Street, Suite 500
San Francisco, California 94104
T: (415) 551-0885
F: (415) 683-7157
E: sonya@minnisandsmallets.com

Attorneys for Plaintiffs
ROBERT BARON DUFFY and ROBERT LOUIS GARY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BARON DUFFY AND ROBERT LOUIS GARY, <br><br> PLAINTIFFS, <br><br> vs. <br><br> FACEBOOK, INC, WAYNE HAWKINS, JAMES SWENSON, AND DOES 1 THROUGH 10, INCLUSIVE, <br><br> DEFENDANTS. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br><br> (1) Violation of Civil Rights Under 42 USC 1981 <br><br><br><br><br><br> Jury Trial Demanded |

## I. INTRODUCTION

Robert Baron Duffy and Robert Louis Gary (collectively "Plaintiffs") bring this action against Facebook, Inc. (hereafter "Facebook") under the provisions of 42 U.S.C. 1981.

## II. BACKGROUND OF DISCRIMINATION AT FACEBOOK AND SUMMARY OF CLAIMS

1.   Facebook is a multi-national employer, founded in 2004, with some 14,500 employees, mostly within the United States.  Its principal function is providing information services.  Facebook is known to have more than one billion customers.

2.   Recent statistics show that African-Americans are employed by Facebook in numbers notably less than would be expected.  In June 2016, according to Facebook, only two percent of Facebook's U.S. employees are African-American, while the percentage of African-Americans in leadership positions was 3%.  In comparison, African-Americans make up 12% of the U.S. workforce.

3.   Recent negative publicity about Facebook's treatment of women and minority employees and its failure to hire qualified women and minority employees has resulted in Facebook giving lip service to correcting its lack of diversity.  While Facebook has contended that it is seeking to address racial diversity and discrimination issues, it has not followed through on these stated commitments, as discussed in more detail below.

4.   One glaring example of overt racial discrimination gone unchecked took place beginning in 2012 in the small town of Forest City, North Carolina.  In 2012, Facebook built a Data Center Facility in Forest City, and with the construction of this facility came the promise of jobs for the citizens of this North Carolina area, which had been hit hard by loss of jobs from the textile and related industries.

COMPLAINT FOR DAMAGES

5. For over three years, Facebook allowed racial harassment and discrimination against African-American employees to infect the working conditions at Forest City, North Carolina.

6. The manager of Facebook's Forest City facility referred to Facebook's African-American employees as "nigger" and "monkey." He described one African-American employee as a "lazy nigger who wants everything handed to him."

7. Facebook's managers in Menlo Park, California were made aware, repeatedly, of acts of discrimination against the very few African-American employees at the Forest City, North Carolina facility. Facebook failed to take adequate steps to correct this racial discrimination. Facebook allowed and continues to allow retaliation against the employees reporting discrimination to fester and continue.

Plaintiffs allege as follows:

**PARTIES, JURISDICTION & VENUE**

8. Plaintiff Robert Baron Duffy (hereafter "Duffy") is a resident of Rutherford County, North Carolina. Duffy is African-American. At all relevant times, Plaintiff Duffy was employed by Facebook at its Forest City, North Carolina facility. Upon information and belief, he was the only African-American manager in the Facilities Operations organization.

9. Plaintiff Robert Louis Gary (hereafter "Gary") is a resident of Rutherford County, North Carolina. Gary is African-American. Plaintiff Gary is a current employee of Facebook at its Forest City, North Carolina facility.

10. Defendant Facebook has its principal place of business in Menlo Park, California. At all relevant times Facebook has regularly conducted business in California and North Carolina. Defendant Facebook is an employer within the meaning of Title VII of the Civil Rights Act of 1964 and at all times relevant to this Complaint has had in excess of 500 employees.

COMPLAINT FOR DAMAGES

11. Defendant Wayne Hawkins was at relevant times the Facilities Manager at the Forest City location, and then a Facilities Regional Operations Manager until about August, 2015.

12. Defendant James Swenson is employed by Facebook and at relevant times was acting as the Operations Manager at the Forest City, North Carolina facility. He is presently the New Sites Startup Director.

13. The true names and capacities, whether individual, corporate or otherwise, of Does 1 through 10 are at this time unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will ask leave to amend this complaint to reflect their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is responsible, jointly and severally, for the events and injuries described herein and caused damages thereby as alleged herein.

## III. FULL FACTUAL STATEMENT

*Mr. Gary is Paid Less Because of his Race.*

14. Plaintiff Robert Gary began working at the Forest City Facebook facility in 2010. From 2010 until June, 2012, Mr. Gary was employed with McKenny Contractors. Mr. Gary worked with sheet metal in the construction of the new Facebook buildings known as FRC1 and FRC3.

15. From about July, 2012 to November, 2012, Mr. Gary worked for Siemens Industry doing work at the Facebook Forest City facility. Upon information and belief, Facebook functioned as a joint employer of Mr. Gary at this time, and set the hours and working conditions for Siemens' employees like Mr. Gary. In particular, Wayne Hawkins, then Forest City Facilities Operations Manager, was Mr. Gary's manager. Upon information and belief,
///

COMPLAINT FOR DAMAGES

Mr. Hawkins had the authority to remove vendors and their employees from the Facebook Forest City facility.

16. In November, 2012, Mr. Gary was hired by Facebook as a Facilities Maintenance technician and paid $20.05 per hour.

17. In December, 2012, Mr. Gary's first review was conducted and he was given a raise of 21 cents per hour.

18. In or about June, 2013, Mr. Gary was told by Mr. Hawkins that he was being promoted to Night Shift Engineer. This position required Mr. Gary to work overnight every night he was assigned. Mr. Hawkins did not mention what pay raise would result from the promotion, so a few days later Mr. Gary emailed Mr. Hawkins asking if the position promotion would include a raise.

19. Mr. Hawkins never responded to Gary's email asking about a possible pay raise due to the promotion. Upon information and belief, Mr. Hawkins told another employee, Stencil Quarles, that he was upset Mr. Gary was asking about a raise.

20. Upon information and belief, at about the same time that Mr. Gary was inquiring if he would receive a pay raise with the promotion to Engineer, Mr. Hawkins told his subordinates that Mr. Gary was a "lazy nigger who wants everything handed to him."

21. Mr. Gary met with Mr. Hawkins in or about late June, 2013, and told him that he was not "all about the money" but just wanted to know whether and what he would get as a raise with the new job. Mr. Hawkins' response was that Mr. Gary would not see any money until he worked his full six-month review cycle and received a good review.

22. In or about July, 2013, Matt Hamrick, who is Caucasian, became Mr. Gary's supervisor and was given the title of Chief Engineer.

///

COMPLAINT FOR DAMAGES

23. Throughout the second half of 2013 and 2014, Facebook hired several new white employees who were placed in the same position or positions highly similar to that held by Mr. Gary. Upon information and belief, each of these white employees was given substantially higher starting pay than Mr. Gary was earning at the time the white employees were hired, in spite of the fact that Mr. Gary had at that time over three years of experience working at the Facebook facility.

24. Upon information and belief, these white employees were given starting pay between $22.00 and $24.00 per hour.

25. In or about the first quarter of 2014, Mr. Gary was given a disproportionately low raise, in spite of being given positive feedback on his performance by both Mr. Hamrick and Mr. Hawkins. In fact, all of Mr. Gary's written reviews for the relevant time periods were at least "meets expectations." His review for the first two quarters of 2013 was "meets expectations" and Mr. Gary's written reviews for the Q3 and Q4 2013, which were provided to him in 2014, reflected that he met and exceeded performance expectations. His review for the first two quarters of 2014 was "exceeds expectations."

26. Other white employees similarly situated to Mr. Gary received far higher raises in 2013 and 2014. Thus, for example, one similarly situated Caucasian employee was given a raise of over $6.00 per hour, while Mr. Gary's raise was $1.67 per hour. That white employee had not been hired until on or about December 17, 2012, and was not placed into the position of Night Shift Engineer until October, 2013, just four months before he was given the raise. Moreover, at the time of his hiring, that white employee lacked the skills, education, and experience to make him qualified for the position of Night Shift Engineer, and thus Mr. Gary was asked to and did train the white employee in the duties of the Night Shift Engineer position.

COMPLAINT FOR DAMAGES

27. That same Caucasian employee was also promoted to IC Level Two, in spite of being in the position of Engineer less than four months. IC levels are a method of job classification used by Facebook for the purposes of pay rates and promotions.

28. Conversely, Mr. Gary remained in the position of IC1 and was denied placement in the IC2 position at that time.

29. Upon information and belief Mr. Gary and another African-American employee, a Critical Facility Engineer, are the lowest paid persons in the Facility and Mr. Gary and another African-American employee have been the lowest paid employees since Mr. Gary's hire.

*Mr. Gary Complains of Race Discrimination.*

30. Once Mr. Gary learned in or about January, 2014 of his low and discriminatory pay raise and denial of elevation in the IC levels, he pursued through the Facebook chain of command complaints that he was wrongfully denied raises and promotions.

31. Mr. Gary verbally complained about pay discrimination to Mr. Hamrick in or about February, 2014.

32. Mr. Gary verbally complained about pay discrimination to Mr. Hawkins in April, 2014, raising the disparate treatment in the raises between him and the white employee he trained. Mr. Hawkins stated that the Caucasian employee in question deserved the raise. When Mr. Gary questioned how that employee could be promoted before the elapse of six months, which was the usual time required before an employee could be promoted, Mr. Hawkins stated that they counted his earlier experience, even though that contravened established Facebook policies.

33. Mr. Gary also complained about pay discrimination to global manager James Faconne in April, 2014. Mr. Faconne told him that he talked to Mr. Hawkins about Mr. Gary's pay, asking if an adjustment needed to be

COMPLAINT FOR DAMAGES

made, and Mr. Hawkins said things were "fine." Mr. Faconne told Mr. Gary he had to take "no" for an answer sometimes.

34. On April 28, 2014, Mr. Gary sent a written complaint to Facebook Human Resources in Menlo Park, California, and provided a copy to managers within the Forest City Facility. In the complaint, Mr. Gary stated that he believed that the pay disparities were based on race discrimination. He stated "I'm in a situation where I feel like I have not been getting the same treatment concerning compensation like the rest of the employees here that are of a different race.......I hope you can look into this ASAP. I believe the reason I have been treated this way is because I'm African American and they never expected for me to say anything."

35. Facebook failed to properly and adequately investigate Mr. Gary's complaint of pay discrimination based on race. On or about May 2, 2014, Sandy Marciari of Facebook headquarters' Human Resources department spoke with Mr. Gary. She gave Mr. Gary a finding of no discrimination.

36. On June 8, 2014, Mr. Gary sent an email to Ms. Marciari saying he was not satisfied with the investigation, because she simply took Mr. Hawkins' word. He stated that he felt it was not investigated thoroughly enough, and all that she had said to him was that "there was no discrimination issues found." He asked if there were other avenues to pursue. He contended that he was the lowest paid Facilities department employee at the Forest City facility, and that that should not be the case, and he stated that he was not comfortable working with Mr. Hawkins or Mr. Hamrick because of the way he had been treated. Mr. Gary stated his belief that their decisions were not based on work performance but favoritism.

///
///
///

COMPLAINT FOR DAMAGES

*Mr. Duffy is Subjected to Race Discrimination by Mr. Hawkins.*

37. In January, 2014, Plaintiff Robert Duffy was hired by Facebook to serve as Assistant Facility Manager at the Forest City, North Carolina facility, reporting to Mr. Hawkins.

38. In or about May, 2014, after receiving complaints that Mr. Hawkins had engaged in race discrimination against Mr. Gary, Facebook promoted Mr. Hawkins to Facilities Operations Regional Manager. His region included the Forest City facility, as well as facilities in Ashburn, Virginia and Sweden.

39. In July, 2014, Mr. Duffy was promoted to Facilities Operations Manager at Forest City. He served in this role for about eighteen months, from July, 2014 to December, 2015

40. Mr. Duffy observed that following this promotion Mr. Hawkins micromanaged him, but did not micromanage other Caucasian employees who were similarly situated to Mr. Duffy. The micromanagement took several forms.

41. For example, Mr. Hawkins persistently interfered with Mr. Duffy's hiring processes.

42. Mr. Hawkins undermined Mr. Duffy's leadership and authority by giving Mr. Duffy's direct reports instructions that were contrary to those given by Mr. Duffy. Mr. Hawkins used intimidation to force employees to follow his directions, even when they countermanded Mr. Duffy's directions.

43. Mr. Hawkins held meetings to which Mr. Duffy should have been but was not invited.

44. Upon information and belief, Mr. Duffy was paid less than similarly situated Caucasian employees.

///
///

*Mr. Duffy and Mr. Gary Complain of Race Discrimination.*

45. On July 1, 2015 Forest City Facebook employee Brian Gill provided a written statement to Mr. Duffy complaining about numerous sexually and racially derogatory statements made to Mr. Gill or in Mr. Gill's presence by Wayne Hawkins. Mr. Gill's statement included the following information:

   a. Mr. Gill heard Mr. Hawkins refer to Mr. Gary as a "lazy nigger that wants everything handed to him";

   b. Mr. Gill heard Mr. Hawkins refer to Mr. Duffy as a "nigger"; and

   c. Mr. Gill heard Mr. Hawkins refer to Stencil Quarles, who is also African-American, as a monkey, asking "how can a monkey be allergic to fucking bananas…." (Mr. Quarles is known to be allergic to bananas).

Mr. Gill concluded his statement by stating that "these again are only a few of the things that have been said directly to me about other employees."

46. On or about June 30, 2015, Mr. Gary and Mr. Duffy reported Mr. Hawkins' racist comments and provided Mr. Gills' statement to Facebook Human Resources in Menlo Park, California.

47. On July 2, 2015, Mr. Duffy and Mr. Gary filed EEOC charges of race discrimination. According to Facebook, these charges were received by them on July 16 and 17.

48. On July 13, 2015, Mr. Duffy sent an email to Effren Bledsoe, of Facebook Human Resources in Menlo Park, describing his stress and discomfort as a result of the racially derogatory statements made about him and others that "creates a discriminatory and/or harassing environment."

49. Mr. Duffy's email stated that he is having "difficulty attending meetings with the accused," Mr. Hawkins, who was allowed to perform his regular job duties and to attend meetings even during the investigation

-10-

COMPLAINT FOR DAMAGES

period, and that Mr. Duffy thought Facebook would have taken precautions to neutralize the environment while investigating.

50. At the end of July, 2015, Facebook human resources representatives came to Forest City to investigate the allegations against Mr. Hawkins. This trip to Forest City took place only after the EEOC sent Facebook a letter enclosing the charges. These interviews took place on or about July 27 and 28th.

51. The investigation of and responses to the Gill statement regarding racial and sexual epithets and harassment and the EEOC charges of Mr. Duffy and Mr. Gary were deeply flawed. The investigation of the acts of racial harassment committed by Mr. Hawkins was not prompt. The initial complaints about Mr. Hawkins' conduct were made at least as early as April 28, 2014, when Mr. Gary sent a written complaint to Facebook Human Resources in Menlo Park, California, and provided a copy to managers within the Forest City Facility, explaining that he believed that the pay disparities he outlined in detail were based on race discrimination.

52. Complaints about Mr. Hawkins open use of racial epithets—including and referencing the Gill statement—were made at least as early as June 30, 2015. Yet it was not until nearly a month after they were put on notice of this conduct that onsite interviews were conducted by Facebook. Moreover, Mr. Hawkins was still performing his job duties and attending meetings at the Forest City facility throughout this time period.

53. Moreover, Facebook failed to take appropriate corrective action in response to the complaints of Mr. Hawkins racist remarks. Upon information and belief, other Facebook managers and employees knew about Mr. Hawkins' racist statements and conduct long before July 2, 2015 and did nothing. This failure to report by other managers and employees violates the express terms of the Facebook discrimination policy, which states that

managers are required to report, and other employees are encouraged to report, "any violation or suspected violation" of the policy.

54. Facebook's anti-harassment policy was not effective. No training on the Facebook Code of Conduct and on diversity at the Forest City facility took place until February, 2016, three years after the racially discriminatory pay discrepancies against Mr. Gary began, and at least two years after Mr. Hawkins freely and repeatedly referred to African Americans as "niggers" and "monkeys."

*Mr. Duffy is Subjected to Retaliation.*

55. On July 27, 2015, less than three weeks after complaining to Mr. Bledsoe and less than four weeks after filing his complaint of race discrimination with Facebook Human resources, Mr. Duffy was sent an email which stated that he would have to interview in the next few months for his current job.

56. The email enclosed a new job description for Facilities Manager, which was the same position and job duties as the position Mr. Duffy was already performing. Upon information and belief, the re-interviewing process was a sham—in fact some similarly situated Caucasian individuals who worked under the same managers were allowed to retain their positions without proving themselves in interviews. Upon information and belief, Mr. Duffy's counterpart at the Data Center facility in Sweden, who is Caucasian and who reported to the same manager that Mr. Duffy did, was able to retain his position without interviewing for it again. Moreover, Mr. Duffy's counterpart Randi Johnson, who is Caucasian, was prepared for her interview by her participation in interview panels.

57. On or about August 5, 2015, Mr. Hawkins left Facebook. Within two weeks, or about mid-August, 2015, Mr. James Swenson, then West Regional Manager, began managing operations at the Forest City facility.

COMPLAINT FOR DAMAGES

Upon information and belief, Mr. Swenson had a close relationship with Mr. Hawkins. Within weeks of Mr. Hawkins departure from Facebook, Mr. Hawkins was able to secure a position at the company at which Mr. Swenson had worked just prior to being employed by Facebook.

58. Mr. Swenson discriminated and retaliated against Mr. Duffy. In August, 2015, Mr. Swenson gave Mr. Duffy a performance review for the "Q3 2015 Performance Summary Cycle" that was worse than he had ever previously received. While the overall rating given to Mr. Duffy was "meets all expectations," the evaluation contained several unwarranted and unduly harsh criticisms. At the time the evaluation was prepared, Mr. Swenson had not worked closely with Mr. Duffy, and in fact barely knew him. The evaluation was written just two weeks after Mr. Swenson became Mr. Duffy's supervisor. The evaluation was written the way it was, with its unfounded negative comments, for retaliatory reasons.

59. That retaliatory intent was confirmed by Anthony Bostwick, who informed Mr. Duffy in January, 2016, that Mr. Swenson had told Mr. Bostwick that "either you support me or Duffy—I recommend that you support me."

60. Mr. Duffy continued to inform Facebook's human resources department in Menlo Park, California about the discriminatory and retaliatory treatment he was receiving. For example, on August 11, 2015, Mr. Duffy emailed Gary Edwards regarding the retaliation he was experiencing. Mr. Duffy also emailed other managers in Menlo Park complaining of retaliation, including having to re-interview for his position, and his belief that Facebook would use the re-interview process to manage him out of his current position

61. On August 21, 2015, Mr. Duffy emailed Mr. Swenson, requesting that his performance review to be revised, based on the fact that much of the information in it apparently came from other unnamed parties, and was otherwise flawed. Rather than taking Mr. Duffy's complaint seriously, Mr.

Swenson's response made clear that Mr. Duffy was not going to be treated fairly at Facebook. Mr. Swenson contended that the evaluation was based on his own perceptions, even though he simply had not been at the facility long enough to fairly make the assessments he articulated.

62. It was not until October 22, 2015, two months later, that Mr. Swenson first met with Mr. Duffy one-on-one to discuss the performance review and Mr. Duffy's request for changes. Mr. Swenson refused to change anything. Although most all of the performance evaluation's negative comments came from statements of other employees, Mr. Swenson refused to identify the alleged complainants or take any steps to resolve the alleged problems with Mr. Duffy's performance.

63. On October 23, 2015, Mr. Duffy filed his second EEOC charge, alleging retaliation. He referred to the performance evaluation which he received in August, 2015.

64. As a result of this discriminatory and retaliatory performance evaluation, and subsequent discriminatory and retaliatory performance evaluations, Mr. Duffy did not receive bonus compensation that he should have received.

65. In a November 9, 2015 email, Mr. Duffy withdrew from the Facilities Manager re-application process, due to the "stress generated over the last few months" and the fact that he did not "feel I have a fair chance of being selected."

66. Following his email withdrawing from the reapplication process, no one from Facebook Human Resources or any other department contacted Mr. Duffy to determine why he had stated that he did not have a fair chance of being selected, or to take any steps to assure that he would be treated fairly.

///

67. On December 7, 2015, Ashley Jenkins, the new Human Resources representative assigned to the Forest City Facility, told Mr. Duffy that she needed to meet with him every week. Upon information and belief, this requirement of meeting weekly has not been imposed on anyone else.

68. On December 11, 2015, Mr. Duffy complained to human resources that "name calling and defamation of character is out of control" and had spilled over to contractors who had recently begun work on the facility building, who were now labeling Mr. Duffy "racist." He reported false statements made about him and asked that an investigation be conducted. In May 2016 he was told that the investigation was over and he should not have any more problems, but he was not told the results of the investigation or how similar issues would be prevented going forward.

69. On or about December 15, 2015, a new Facility Operations Manager, Jean Normandy, began working at the Forest City facility.

70. When Ms. Normandy was hired as Facility Operations Manager, Mr. Duffy was demoted to the position of Chief Facility Engineer. Since December, 2015, Mr. Duffy has reported to Ms. Normandy, who is Caucasian.

71. Additional acts of retaliation took place after Ms. Normandy was placed in the position of Facilities Operations Manager. All six of Mr. Duffy's reports were stripped from him. Moreover, he was kept out of the performance evaluations of subordinate employees who had worked under him for the prior year, an unusual step.

72. Ms. Normandy required Mr. Duffy to take a management class for new managers, even though Mr. Duffy at the time had three years of management experience. Ms. Normandy did not require similarly situated Caucasian employees to attend a management class for new managers.

73. On October 21, 2016, Plaintiff Duffy was constructively terminated from his employment at Facebook, due to intolerable working

COMPLAINT FOR DAMAGES

conditions. Any reasonable person, subjected to the same working conditions to which Mr. Duffy was subjected, would have resigned from employment.

*Discrimination and Retaliation Continue at Facebook's Forest City Facility.*

74. IC level manipulation with adverse affects on African Americans continued from 2013 until early 2016.

75. Pay discrimination against Mr. Gary and other African American employees continues. Mr. Gary was wrongfully denied timely step increases to IC2 and IC3 and wrongfully denied pay increases which were given to other similarly situated employees. His pay has consistently lagged behind white employees who are similarly situated.

76. Mr. Gary continues to earn less than similarly situated Caucasian employees, even those hired in the last twelve months. Mr. Gary was finally promoted to IC3 on February 22, 2016, far later than his peers' promotions to this IC level

77. Since July, 2013, Mr. Gary has been performing the job of Facility Engineer, yet he was not made an IC3 until February, 2016. In contrast, a new Caucasian Facility Engineer was hired on November 30, 2015. That Caucasian employee started out at the IC3 level and with a starting pay of approximately $70,000 dollars per year, yet Mr. Gary's starting pay was less than $50,000.00 per year

78. Moreover other acts of race discrimination, especially in hiring, occurred during 2014 and 2015 that were not addressed effectively by Facebook. For example, Carlos Gary, who is African-American, was hired as an intern. After his hire in this temporary position, Mr. Hawkins set up roadblocks to his hire as a permanent employee. On or about August 28, 2015, Carlos Gary was denied a permanent position and his employment was terminated. Facebook said that this was because it was not hiring interns, yet other interns, who were Caucasian, were hired.

COMPLAINT FOR DAMAGES

79. Mr. Gary and Mr. Duffy each filed a charge of discrimination in July, 2015. Mr. Duffy filed his second charge on or about October 23, 2015, No. 430-2016-00086, alleging that due to his reports of harassment and discrimination he had been retaliated against by Facebook by being given his first negative performance evaluation in August, 2015. He filed a third charge (430-2016-00953) regarding his Demotion on February 22, 2016, alleging race and retaliation, and a fourth charge (430-2016-01086) on February 29 regarding his second negative performance review. All charges are pending.

## IV.   LEGAL CLAIMS

### Plaintiffs' First Cause of Action

### Violation of Civil Rights Under 42 USC 1981

80. The allegations contained in the above paragraphs are incorporated by reference herein.

81. Defendants have intentionally discriminated against Plaintiffs in violation of Section 1981 by (1) denying promotions to Plaintiff Gary and Plaintiff Duffy in whole or in part on the basis of race; (2) denying Plaintiff Gary pay equal to similarly situated white employees, in whole or in part on the basis of race, (3) harassing Plaintiffs, (4) allowing a work environment hostile to African-Americans to fester at the Forest City Facebook facility (4) retaliating against Plaintiff Duffy by demoting him from the position of Facilities Operations Manager, (5) constructively discharging Plaintiff Duffy and (5) denying Plaintiffs equal terms and conditions of employment in whole or in part on the basis of race.

82. As a proximate and foreseeable result of Defendants' conduct, Plaintiffs have suffered lost wages and benefits, suffered emotional distress, mental anguish, stress, anxiety, embarrassment, humiliation, and their peace of mind has been disturbed.

///

83. As a proximate result of Defendants' wrongful conduct, Plaintiffs have suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00), and are entitled to recover compensatory damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

84. Defendants' actions were done maliciously, willfully or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiffs are entitled to recover punitive damages in an amount in excess of $25,000.00.

## V.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray the Court to:

A. Enter a judgment against Defendants for declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants;

B. Order Defendants to pay Plaintiffs compensatory damages in excess of Twenty Five Thousand Dollars ($25,000.00),

C. Award Plaintiffs all reasonable costs and attorneys' fees incurred in connection with this action;

D. Award Plaintiffs such other and further equitable relief as the Court deems appropriate under the circumstances;

E. Grant the Plaintiffs a trial of this matter by a jury.

DATED: November 22, 2016

                MINNIS & SMALLETS LLP

        by: /s/ Sonya L. Smallets
                SONYA L. SMALLETS, ESQ.
                Attorneys for Plaintiffs
                ROBERT BARON DUFFY and
                ROBERT LOUIS GARY