UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BARON DUFFY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>Defendants. | Case No. 16-cv-06764-JSC<br><br>**ORDER RE: MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 26 |

Plaintiff Robert Louis Gary brings this civil rights action against his employer, Facebook, Inc., and Facebook managers Wayne Hawkins and James Swenson alleging race discrimination. Gary worked as an engineer at Facebook's Data Center Facility in Forest City, North Carolina. The gravamen of the complaint is that Defendants have intentionally discriminated against him by denying him promotions on the basis of race, denying him pay equal to similarly situated white employees, harassing him and allowing a work environment hostile to African Americans at the North Carolina Data Center. (Dkt. No. 1.[1]) Now pending before the Court is Defendants' motion to transfer this action to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).[2] (Dkt. No. 26.) Having considered the parties' submissions, and having had the benefit of oral argument on May 4, 2017, the Court GRANTS the motion to transfer.[3]

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Facebook and Swensen filed the motion, which Hawkins joined. (Dkt. Nos. 26, 27.)

[3] All parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c), including Plaintiff Robert Baron Duffy, who filed this action along with Gary. (Dkt. No. 10, 19, 31.) The parties' papers only refer to Gary's claims. According to Defendants, Duffy "is in the process of dismissing his claims against Defendants[.]" (Dkt. No. 26 at 6.) In their joint case management conference statement, Defendants noted their intent to compel

# BACKGROUND

Facebook has its principle place of business in Menlo Park, California. (Dkt. No. 1 ¶ 10.) Beginning in 2012, Facebook built and operated a Data Center Facility in Forest City, North Carolina. (*Id.* ¶ 4.) Plaintiff is an African-American North Carolina resident who worked on construction of the North Carolina Data Center then was hired as a Facebook employee Facilities Maintenance technician in 2012. (*Id.* ¶¶ 9, 14-16.) Defendant Hawkins was Plaintiff's manager at the North Carolina Data Center from 2012 to 2014. (*Id.* ¶ 11, 15, 57; Dkt. No. 26-6 ¶ 2.) Hawkins has, at all relevant times, worked in and resided in North Carolina and continues to reside there. (Dkt. No. 26-6 ¶¶ 2, 4.) Defendant Swenson became Plaintiff's supervisor at the North Carolina Data Center in 2015. (Dkt. No. 1 ¶¶ 12, 57.) Swensen primarily resides in Texas and Utah. (Dkt. No. 26-4 ¶ 3.)

Plaintiff alleges that throughout his employment at Facebook, he has been denied promotions on the basis of race, denied pay equal to similarly situated white employees, harassed and retaliated against by his supervisors, and otherwise denied equal terms and conditions of employment on the basis of race, and that Defendants have "allow[ed] a work environment hostile to African-Americans to fester at the [North Carolina Data Center.]" (Dkt. No. 1 ¶ 81.) The peers that received promotions, raises, or higher salaries all worked at the North Carolina Data Center, and most reside there or just across the border in South Carolina. (*Id.* ¶¶ 22-28; Dkt. No. 26-6 ¶¶ 5, 7; Dkt. No. 26-5 ¶ 7.) Plaintiff does not expressly allege who had decision-making authority for employee pay or promotions, but it appears to be Plaintiff's direct managers in the North Carolina Data Center, like Hawkins. (*See, e.g.*, Dkt. No. 1 ¶ 33.) According to Plaintiff, a number of his co-workers at the North Carolina Data Center overheard comments regarding race in the workplace or have knowledge about the pay rates of employees who are similarly situated to Plaintiff (*See* Dkt. No. 26-2 at 3-4), and those individuals are North Carolina residents. (*See* Dkt. No. 26-6 ¶ 5.) Former plaintiff Duffy, another witness to the discrimination, resided in North

---

Duffy's dispute to arbitration. (Dkt. No. 21 at 3.) And only Gary filed an opposition to Defendants' motion to transfer. But there has been no stipulation of dismissal filed on the docket yet. The Court assumes that Duffy will dismiss his claims forthwith, but the Court would reach the same conclusion as to transfer whether or not Duffy remains in the case.

Carolina during the time of the discrimination but has since relocated to Reno, Nevada. (Dkt. No. 26-2 at 3; Dkt. No. 28 at 9.)

Plaintiff initially reported the discrimination to his manager, Matt Hamrick, who was and remains a North Carolina resident. (Dkt. No. 1 ¶ 31; Dkt. No. 26-5 ¶ 7.) Plaintiff also complained about his pay to Facebook global manager James Faccone (Dkt. No. 1 ¶¶ 31-34); while Plaintiff stated in his initial disclosures that Faccone worked out of Facebook's Menlo Park headquarters, (Dkt. No. 26-2 at 5), according to Facebook Faccone is a North Carolina resident. (Dkt. No. 26-5 ¶ 7.)

After his complaints "were not resolved locally," Plaintiff complained to Facebook Human Resources in Menlo Park. (Dkt. No. 28-1 ¶ 9; Dkt. No. 1 ¶ 34.) He corresponded with a Menlo Park-based Facebook Human Resources employee who informed him that the company's investigation had found no discrimination. (Dkt. No. 1 ¶ 35; Dkt. No. 28-1 ¶¶ 12-14, 16.) In the summer of 2015, Plaintiff again contacted Facebook Human Resources in Menlo Park to report discrimination and filed an EEOC charge of race discrimination. (Dkt. No. 1 ¶¶ 46-47; Dkt. No. 28-1 ¶ 18.) Shortly thereafter, Facebook Human Resources employees from Menlo Park visited the North Carolina Data Center to investigate Plaintiff's claims. (Dkt. No. 1 ¶ 50.) One of the Menlo Park-based employees interviewed Plaintiff. (Dkt. No. 28-1 ¶ 27.) According to Plaintiff, "all or most of the decisions affecting [his] complaints of race discrimination have been made by California-based employees of Facebook." (Dkt. No. 28-1 ¶ 32.)

Plaintiff filed suit in this District on November 22, 2016. (Dkt. No. 1.) Defendants subsequently filed the pending motion to transfer venue to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

**LEGAL STANDARD**

The Court has discretion to transfer a case to another district pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In deciding whether to transfer a case pursuant to Section 1404(a), "[t]he transferor court must first determine whether the action might have been brought in the transferee court, and then the court must make an individualized, case-by-case consideration of convenience and fairness." *Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. C-07-0894, 2007 WL 2023515, at *3 (N.D. Cal. July 12, 2007) (internal quotation marks omitted); *see also* i, 211 F.3d 495, 498 (9th Cir. 2000) (same). "The moving party bears the burden of showing that jurisdiction and proper venue would exist in the district to which a transfer is requested." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003). To determine convenience and fairness, this District commonly articulates the following relevant factors in a motion to transfer venue:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum.

*Martin v. Global Tel*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015); *see also Jones*, 211 F.3d at 498-99 (articulating additional factors to consider such as "respective parties' contacts with the forum" and "differences in the costs of litigation in the two forums"). "No single factor is dispositive." *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). Instead, "[w]eighing of these factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007). Further, "[t]his list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Global Tel*Link*, 2015 WL 2124379, at *2.

"It is not enough for the defendant to merely show that it prefers another forum, and transfer will also not be allowed if the result is merely to shift the convenience from one party to another." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014); *see also Catch Curve, Inc. v. Venali, Inc.*, No. CV 05-04820 DDP, 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006) (defendant "must demonstrate that the present forum will result in a clear balance of

inconvenience to him or her"). In connection with motions to transfer, courts should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents. *See Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983). Vague generalizations or conclusory declarations are insufficient to meet this burden. *See Forte Capital Partners v. Harris Cramer*, No. C07-01237 MJJ, 2007 WL 1430052, at *2 (N.D. Cal. May 14, 2007).

**DISCUSSION**

**I.     The Action Could Have Been Brought in the Western District of North Carolina**

Plaintiffs do not dispute that the case might have been brought in the proposed court. But Defendants bear the burden of showing that jurisdiction and venue would be proper, and the Court cannot assume or consider waiver of jurisdictional issues on a 1404(a) transfer. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) ("[T]he power of a District Court under [Section] 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."); *see also Comm. Lighting Prods., Inc. v. U.S. Dist. Ct.*, 537 F.2d 1078, 1079 (9th Cir. 1976) (finding "defendants' consent to the transfer is irrelevant"). Instead, the Court may only transfer after determining the transferee court's propriety. *See Int'l Patent Dev. Corp. v. Wyomont Partners*, 489 F. Supp. 226, 2299 (D. Nev. 1980) (recognizing under *Hoffman* that "the determination of transferability must be made as of the time of filing the action in the transferor district").

A district court is one in which an action could have been brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper. *Hoffman*, 363 U.S. at 343-44; *Comm. Lighting Prods.*, 537 F.2d at 1079. The Western District of North Carolina satisfies all three requirements. First, it has subject matter jurisdiction over Plaintiff's civil rights claims under federal question jurisdiction. 28 U.S.C. § 1331. As for personal jurisdiction, Hawkins is subject to the Western District of North Carolina's general jurisdiction because he is domiciled in the state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Swensen is subject to the court's specific jurisdiction based

1  on his work as manager in the North Carolina facility, as Plaintiff's claims arise out of that

2  conduct. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th

3  Cir. 2003). And that court could exercise personal jurisdiction over Facebook based on its

4  business operations in the state. *See Menken v. Emm*, 503 F.3d 1050, 1056-57 (9th Cir. 2007)

5  (citations omitted). Third, venue would be proper in the Western District of North Carolina

6  because "a substantial part of the events . . . giving rise to the claim occurred" there. 28 U.S.C.

7  § 1391(b)(2). Thus, this action could have been brought in the Western District of North Carolina.

## II. Convenience and Fairness Considerations Weigh in Favor of Transfer

Both parties contend that the relevant convenience and fairness factors support their positions. The parties do not address the ease of access to evidence, and indeed "[t]he weight of this factor has decreased as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents between districts." *TransPerfect Global*, 2010 WL 3619565, at *4. Thus, this factor is neutral. The familiarity of each forum with the applicable law is likewise neutral because this case arises from federal law. *See Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 WL 4396718, at *5 n.3 ("Familiarity with the governing law is a non-factor in federal question cases where both fora are federal courts.") (citation omitted). Nor do the parties address feasibility of consolidation of other claims, so this factor is neutral, too. The Court now turns to the remaining disputed factors.

### A. *The Plaintiff's Choice of Forum*

"[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, "[t]he degree to which courts defer to the plaintiff's venue choice is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Express Corp.*, No. C-00-3172 PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) (citation omitted); *see also Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). "In judging the

weight to be accorded [the plaintiff's] choice of forum, consideration must [also] be given to the extent of [the parties'] contacts with the forum, including those relating to [the plaintiff's] cause of action." *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Where the degree of deference given to a plaintiff's choice of venue is reduced, the defendant's burden to overcome the plaintiff's choice is also reduced. *See Williams v. Granite Constr. Co.*, No. C08-04202 HRL, 2009 WL 250104, at *2 (N.D. Cal. Feb. 3, 2009) (citation omitted).

Here, the Court gives reduced deference to Plaintiff's choice of forum. Plaintiff is not a California resident. Although Facebook's principal place of business is in this District, the other two defendants neither reside nor work here. Moreover, the facts giving rise to this lawsuit occurred only tangentially in California as compared to North Carolina. Plaintiff was hired and worked in North Carolina. The North Carolina Data Facility is where he was denied promotions, subject to harassment, and given unequal pay; the comparators Plaintiff identified all worked there, too. There is no indication that Plaintiff's work responsibilities had any connection to Facebook's operations in Menlo Park.

Plaintiff contends that Facebook's Menlo Park headquarters played an important role in the discrimination at issue because (1) that office promulgates the governing anti-discrimination and harassment policies; (2) someone from Human Resources in the Menlo Park office reviewed his complaints of discrimination and corresponded with Plaintiff; and (3) another group of Menlo Park-based employees were responsible for the investigation into his claims. (*See* Dkt. No. 28 at 10.) These are arguments are unpersuasive. First, the situs where the company policies were written matters little; instead, the relevant inquiry is whether the policies were in place in North Carolina, the site of the alleged discrimination. As for the second two arguments, the Court acknowledges that several individuals from the Menlo Park office were involved in reviewing Plaintiff's claims, but they either did so via email or actually visited North Carolina to conduct their investigation; they do not create a connection to California that overcomes the fact that the balance of Plaintiff's claims occurred in North Carolina.

*Williams v. Granite Construction Co.*, No. C08-04202 HRL, 2009 WL 250104 (N.D. Cal. Feb. 3, 2009), is illustrative. There, the plaintiff, the only African American at his jobsite, worked

7

in Nevada, where he alleged that he was denied training and work opportunities that lower-level white employees were given and fired when he complained to Nevada-based management about the mistreatment. *Id.* at *1. Plaintiff filed suit in this District, and the defendant moved to transfer the plaintiff's discrimination claims to Nevada, which was the site of the "material facts and events giving rise to plaintiff's [discrimination] claims." *Id.* The plaintiff contended that his choice of forum was entitled to deference because (1) the defendant's California-based management hired the plaintiff and "monitored and directed [the company's] response to plaintiff's complaints"; and (2) the company had told plaintiff to direct any questions about its code of conduct to its California-based management. *Id.* at *2. The court found that the plaintiff's choice of forum was entitled to "considerably less weight" because, among other reasons, the California office was not involved in the underlying discrimination and did not have contact with the plaintiff until after his termination. *Id.* Put another way, "the locus of operative facts weigh[ed] strongly in favor of transfer." *Id.*

In other employment discrimination cases, courts have found that this factor favors transfer where the underlying acts of discrimination occurred outside the chosen forum and the only connection to the forum was the defendant's headquarters or human resources department. *See, e.g.*, *Hawkes v. Hewlett-Packard Co.*, No. CV-10-05957-EJD, 2012 WL 506659, at *4 (N.D. Cal. Feb. 5, 2012). In other types of cases, courts have similarly concluded that transfer is appropriate where the underlying conduct occurred in the transferee forum even if an ultimate determination was made in the forum in which the plaintiff filed suit. *See, e.g.*, *Pac. Mar. Ass'n v. NLRB*, 905 F. Supp. 2d 55, 61 (D.D.C. 2012) (in administrative decision resolving dispute between labor unions, noting that while the defendant's challenged decision was made in Washington, D.C.—the plaintiff's chosen forum—any role played by officials there was overshadowed by the fact that their decisions were based on work done by government employees in Oregon, the true locus of the dispute) (citation omitted).

So too here. Given the locus of the discrimination, the Northern District does not have a strong connection with Plaintiff's cause of action. Although Menlo Park employees investigated his discrimination claims, they considered the acts of North Carolina employees. Certainly,

8

Plaintiff has established that there is *some* connection between the forum and his discrimination claim, but that does not compel the conclusion that his choice of forum is entitled to deference.

In addition, Plaintiff maintains that his choice of forum should be entitled to deference "because Facebook is based here and any public resolution of this matter which includes a finding of discrimination will carry far more weight if it is issued here where Facebook resides." (Dkt. No. 28 at 11.) Defendants have not cited any authority indicating that filing in a company's home forum to achieve maximum impact constitutes impermissible forum shopping; instead, they repeatedly claim that it is and cite cases holding that forum shopping is inappropriate. This is not enough for the Court to conclude that Plaintiff has engaged in forum shopping by filing where one of the defendants is headquartered. Thus, this argument does not factor into the Court's analysis.

In sum, notwithstanding the role of several Menlo Park-based Facebook employees in the investigation into Plaintiff's discrimination claims, because Plaintiff is a North Carolina resident, the balance of events giving rise to this lawsuit occurred in North Carolina, and the majority of the material witnesses who would provide the most meaningful testimony in this case reside there, the Court accords less weight to Plaintiff's choice of forum and, accordingly, Defendants face a lower burden of overcoming that choice.

B.  *The Parties' Convenience*

For this factor, the Court considers the relative convenience of each district court and finds in favor of transfer when the transferee court will increase the parties' and witnesses' overall convenience. *See Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *6 (N.D. Cal. Feb. 22, 2008); *see, e.g.*, *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 778 (N.D. Cal. June 2, 2015) (noting that this factor "weighs strongly in favor of the transfer [where] this district is not particularly convenient for a majority of those involved") (citation omitted).

Perhaps given its size and resources, Facebook does not contend that litigating in North Carolina will be inconvenient. While it is undisputed that Facebook, given its headquarters here, has connections to this District, Defendants have demonstrated that Plaintiff's claims do not have a material connection with this District. The mere fact that one defendant's headquarters are here

does not make this forum more convenient when the claims really arise out of conduct in another forum. *See, e.g.*, *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1159 (S.D. Cal. 2005) ("While it certainly cannot be disputed that the defendants, one of which is headquartered here, have some connections with the Southern District of California, plaintiffs have failed to demonstrate that *their claims* have a *material* connection with this district . . . .") (emphasis in original). Moreover, the convenience of a global business like Facebook is subject to less weight than individual parties who would be more affected by litigating outside of their home forums. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131-32 (C.D. Cal. 2009) (finding transfer was appropriate in part because the plaintiffs were large corporations and the defendants were small businesses whose operations would be disrupted if they were forced to send their two employees to litigate outside their home forum).

It is unclear which forum would be more convenient for Defendant Swensen; while he avers that his primary residences are in Utah and Texas, he also states that he oversees data centers worldwide, including current projects in Europe, the Midwest, and Southwestern United States. (Dkt. No. 26-3 ¶ 3.) Moreover, Swensen is a Facebook employee, so presumably Facebook will bear the cost of his travel. Thus, it is not clear that either the Northern District or the Western District of North Carolina will be more or less convenient for Swensen, which does not support transfer.

But North Carolina is a more convenient forum for the two remaining individual parties. Plaintiff has no connection to the Northern District of California and resides in North Carolina. Litigating there would be more convenient for him. Likewise, litigating in North Carolina instead of the Northern District of California will be significantly more convenient for Hawkins, who is no longer a Facebook employee. (Dkt. No. 26-6 ¶ 2.) Hawkins lives and works in North Carolina. (*Id.* ¶ 4.) He works a full-time job, is his family's primary breadwinner, has significant debt, and is representing himself because he cannot afford counsel. (Dkt. No. 26-6 ¶¶ 2-3.) Hawkins avers that it would be "an extreme financial burden" for him to litigate in the Northern District of California—a burden so high that he doubts his ability to effectively defend himself in this case. (*Id.* ¶ 8.) North Carolina would be significantly more convenient for Hawkins.

10

Plaintiff insists that North Carolina would be inconvenient for Defendants Facebook and Swensen because both in-house counsel and their litigation counsel are from the Northern District of California. (*See* Dkt. No. 28 at 13.) But convenience to counsel is irrelevant on a Section 1404(a) motion to transfer. *See Smith v. Aetna Life Ins. Co.*, No. C 11-2559 SI, 2011 WL 3904131, at *2 (N.D. Cal. Sept. 6, 2011) ("The convenience of counsel is not considered for purposes of deciding whether a venue is convenient for the purposes of § 1404(a).") (citation omitted). Thus, the transferee court would be more convenient to Plaintiff and Hawkins, but would be a wash for the other two Defendants. This factor weighs slightly in favor of transfer.

### C. *The Witnesses' Convenience*

Next, "[t]he convenience of witnesses is often the most important factor in resolving a motion to transfer. The trial court looks at who the witnesses are, where they are located, and the relevance of their testimony." *Bunker v. Union Pac. R.R. Co.*, No. C 05-04059, 2006 WL 193856, at *2 (N.D. Cal. Jan. 23, 2006) (citation omitted). "[T]he convenience of a party's employee witnesses is entitled to little weight because they can be compelled by their employers to testify regardless of venue." *Nicholas Thanos, M.D. v. Unum Life Ins. Co.*, No. 15-cv-03616-YGR, 2015 WL 5770786, at *3 (N.D. Cal. Oct. 2, 2015). The Court instead accords more weight to the convenience of non-party witnesses in its analysis. *See id.* at *3 ("[T]he convenience of non-party witnesses is more important than the convenience of the parties."). This is because "[t]he convenience of witnesses includes a separate but related concern, the availability of compulsory process to bring unwilling witnesses live before the jury." *TransPerfect Global, Inc. v. Motionpoint Corp.*, NO. 10-02590 CW, 2010 WL 3619565, at *3 (N.D. Cal. Sept. 13, 2010) (internal quotation marks and citation omitted). Under Federal Rule of Civil Procedure 45(c):

> [a] district court may only subpoena a witness to compel attendance at a [trial, hearing, or deposition] if (1) that witness resides, is employed, or regularly transacts business in person within 100 miles of the proceeding; or (2) the witness resides, is employed, or regularly transacts business in person in the same state as the proceeding and the witness "would not incur substantial expense" if compelled to attend.

*Baker v. Bayer Healthcare Pharms.*, No. 13-cv-00490-THE, 2015 WL 4456085, at *3 (N.D. Cal.

11

1    July 21, 2015).

2    Here, all of the witnesses to the underlying discrimination—that is, the discrimination
3    Plaintiff experienced on the job that led him to make internal complaints—are in North Carolina.
4    Including the witnesses to Facebook's handling of Plaintiff's discrimination complaint and
5    investigation, 18 of the 27 witnesses named in Plaintiff's Initial Disclosures—two thirds of the
6    witnesses—are located in North Carolina, seven are located in California, and the remainder are
7    located in other states. (*See* Dkt. No. 26-4 ¶¶ 3-4; Dkt. No. 26-5 ¶¶ 3-8; Dkt. No. 26-7 ¶¶ 5-6.)
8    The location of the majority of witnesses weighs in favor of transfer.

9    As for the ability for the forum court to compel the witnesses' testimony, aside from
10   Plaintiff and the individual defendants, 14 of the witnesses in Plaintiff's initial disclosures are
11   current Facebook employees whose appearance and testimony Facebook can compel. *See*
12   *Nicholas Thanos, M.D.*, 2015 WL 5770786, at *3. (*See* Dkt. No. 26-2; Dkt. No. 26-7 ¶ 7.) Thus,
13   narrowing the inquiry to the non-party, non-employee witnesses at issue here, any of Plaintiff's
14   former co-workers in the North Carolina Data Center who are no longer Facebook employees are
15   mostly North Carolina residents subject to compulsory process in the Western District of North
16   Carolina. (*See* Dkt. No. 26-7 ¶ 7.) Former plaintiff and witness Baron Duffy resides in Nevada
17   and is therefore not subject to compulsory process in either the transferor or transferee court. The
18   record is silent as to where former Facebook employees Sandy Marciari and Gary Edwards, who
19   worked in California, reside; they have no clear residency for the purposes of this analysis. Thus,
20   the compulsory process requirements slightly favor transfer for the former North Carolina-based
21   employees only. Defendants have not demonstrated or even alleged that they will suffer prejudice
22   if particular non-party, non-employee witnesses do not testify. *See Heartland Payment Sys., Inc.*
23   *v. Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2014 WL 5695051, at *3 (N.D. Cal. Nov. 4,
24   2014) (concluding that this factor weighed against transfer where defendants failed to show
25   prejudice from an inability to compel non-party witnesses and plaintiffs identified several
26   California witnesses that could be compelled). But this does not outweigh the reality that two
27   thirds of the witnesses who will testify in this matter live in or near the Western District of North
28   Carolina. *See Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147-48 (C.D. Cal. 2009) (finding

12

factor in favor of transfer). Ultimately, the convenience of the witnesses weighs in favor of transfer.

E. *Any Local Interest in the Controversy*

Defendants contend that North Carolina has a much greater interest and obligation to hear this case than California because Plaintiff is a North Carolina resident who alleges that "other North Carolina residents harassed and discriminated against him on the basis of his race at his work location in North Carolina." (Dkt. No. 26 at 18.) Plaintiff does not directly address this factor, but elsewhere notes that the discrimination against Plaintiff "appears to be part of a larger problem of uncorrected racial bias at Facebook . . . ." (Dkt. No. 28 at 11.) That may be, but the controversy in this case is not about "a larger problem" at Facebook in general, but the alleged discrimination against Plaintiff in particular. North Carolinians have a greater local interest because the lion's share of the discriminatory events occurred in North Carolina. This factor weighs in favor of transfer. *See Garcia v. 3M Co.*, No. C-09-01943 RMW, 2009 WL 3837243, at *4 (N.D. Cal. Nov. 16, 2009) ("When an action involves an incident occurring in a particular locale, there is a public interest in having the controversy adjudicated in that locale, rather than in a remote forum.") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947)). While some courts have concluded that the state where a corporation is located has an interest in a discrimination lawsuit even though the discrimination occurred elsewhere, generally that involves class actions where the plaintiffs seek injunctive relief that would change the company's practices moving forward, thus affecting residents of that state. *See, e.g.*, *Garcia*, 2009 WL 3837243, at *4. Not so here, where Plaintiff seeks compensatory damages. Thus, this factor supports transfer.

F. *The Relative Court Congestion and Time to Trial in Each Forum*

Only Defendants offer statistics about the relative congestion of the transferor and transferee courts. Defendants note that in 2016 there were 377 weighted filings per judge in the Western District of North Carolina versus 499 in the Northern District of California, and the same trend existed in the preceding four years.[4] (*See* Dkt. No. 26 at 18 (citation omitted).) Neither

---

[4] "Weighted filings data take into account the different amounts of time it takes a judge to resolve various types of civil and criminal actions." U.S. District Courts – Judicial Business 2014, United

13

party has submitted any evidence about the relative time to trial. But based on the relative congestion alone, and especially given Plaintiff's failure to respond to this argument, this factor weighs in favor of transfer.

      G.    *Conclusion as to Convenience Factors*

In sum, Defendants' burden for showing convenience decreases where, as here, a nonresident plaintiff brings suit in a court where few of the events giving rise to his claims occurred. The convenience of two of the parties, the convenience of the witnesses, the local interest in the controversy, and the relative congestion of the courts weigh in favor of transfer to the Western District of North Carolina. The remaining factors are neutral. Taking all of the relevant factors into consideration, the Court concludes that Defendants have met their burden of demonstrating that transfer to the Western District of North Carolina is in the interest of justice and convenience.

## CONCLUSION

For the reasons described above, the Court GRANTS the motion to transfer. The Clerk of Court is directed to transfer this case to the Western District of North Carolina.

This Order disposes of Docket No. 26.

**IT IS SO ORDERED.**

Dated: May 4, 2017

                                                JACQUELINE SCOTT CORLEY
                                                United States Magistrate Judge

---

States Courts, http://www.uscourts.gov/statistics-reports/us-district-courts-judicial-business-2014 (last visited May 1, 2017).